```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ERIC BOADI,

                        Plaintiff,                            MEMORANDUM
                                                              DECISION AND ORDER
        -against-
                                                              12 Civ. 2456  (BMC)
CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; DET. WILLIAM
GREER; JAMES M. WILLIAMS; LARRY
OLINSKY, DET. RYAN; DET. MOY; ADA
KAMI GORDON-SOMMERS,

                        Defendants.

----------------------------------------------------------X
```

**COGAN,** District Judge.

Plaintiff Eric Boadi filed this *pro se* action pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution. By Memorandum Decision and Order dated May 29, 2012, this Court dismissed plaintiff's claims against New York City, New York City Police Department ("NYPD"), and Assistant District Attorney Kami Gordon-Sommers. The Court held that plaintiff's false arrest claim could proceed against defendants Detective William Greer, James M. Williams, Larry A. Olinsky, Detective Ryan, and Detective Moy. The Court also granted plaintiff leave to amend his complaint to correct certain deficiencies in his malicious prosecution claim. On July 23, 2012, plaintiff filed an amended complaint that fleshed out his prior claims and added new claims. For the reasons set forth below, all of plaintiff's claims are dismissed except his deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment.

## BACKGROUND

Plaintiff's initial complaint included only one short paragraph of facts. In this paragraph, plaintiff explained that he was indicted by a Kings County grand jury for a robbery that occurred on August 18, 2007, in Brooklyn; that he was acquitted at trial in June, 2009; and that the defendants prosecuted him despite being cognizant of exculpatory evidence such as a toll bridge receipt and cellphone records which allegedly proved that plaintiff was not in Brooklyn on the date of the robbery.

By Memorandum Decision and Order dated May 29, 2012, the Court dismissed plaintiff's claims against New York City, the New York City Police Department ("NYPD"), and Assistant District Attorney Kami Gordon-Sommers under 28 U.S.C. § 1915 (e)(2)(B). The Court also explained that plaintiff's malicious prosecution claim was deficient for two reasons. First, plaintiff had alleged that he was indicted by a Kings County grand jury. This allegation created a presumption of probable cause for plaintiff's arrest which appeared to preclude his malicious prosecution claim. Second, plaintiff failed to allege that defendants acted maliciously, since a more logical reading of the complaint was that defendants simply disagreed with plaintiff over the meaning of the allegedly exculpatory evidence. The Court warned plaintiff that failure to correct these deficiencies would result in dismissal of the malicious prosecution claim under 28 U.S.C. § 1915 (e)(2)(B).

In his amended complaint, plaintiff explained that he was arrested for the robbery pursuant to a warrant. He was transported to the precinct on that same day, where he was handcuffed to a wall for more than eighteen hours. During those eighteen hours, he was deprived of food, water, and use of a toilet. At some point, plaintiff was transferred to an interrogation room and was accused of having robbed a Western Union at gun point. Plaintiff

alleges that he was interrogated for more than twelve hours and that the interrogating detectives "psychologically tortured" him by depriving him of food, water, sleep, and use of the toilet. He alleges that the detectives attempted to coerce plaintiff into writing a statement in violation of his Miranda rights and lied to plaintiff by falsely informing him that they had the power to make prosecutors reduce his sentence in exchange for a guilty plea.

Plaintiff was arraigned the next day and was unable to make bail at that time. Although it is unclear whether plaintiff was incarcerated for the entire pre-trial period (from August 21, 2007, until June, 2009), he alleges that he was in jail for the January 30, 2008, birth of his daughter.

Plaintiff lists a variety of allegedly exculpatory evidence and claims that the defendants prosecuted him despite having knowledge of this evidence. For example, cell phone records and information regarding a toll bridge crossing in Bayonne, New Jersey, allegedly demonstrated that plaintiff was not in Brooklyn on the date of the crime. Plaintiff also provided the detectives with the names and telephone numbers of individuals with whom he was celebrating his birthday on the date of the crime. Plaintiff also alleges that he clearly did not meet the description of the robbery suspect, since the suspect was reported to be four inches taller than plaintiff and the suspect was reported to have no visible tattoos, whereas plaintiff has several visible arm tattoos.

Plaintiff's amended complaint restated his false arrest, malicious prosecution, and Monell claims. In addition, the amended complaint listed three new claims: first amendment retaliation; violation of due process; and cruel and unusual punishment.

## DISCUSSION

As explained in this Court's Memorandum Decision and Order dated May 29, 2012, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i)

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B). As always, this Court construes a *pro se* litigant's pleadings liberally, see Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010), especially when those pleadings allege civil rights violations. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-93 (2d Cir. 2008).

Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted), a complaint must plead enough facts to state a claim to relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausability when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

A.  **Malicious Prosecution**

Plaintiff has failed to correct the deficiencies in his malicious prosecution claim that the Court noted in its May 29, 2012, Order. As the Court noted, plaintiff's indictment by the grand jury created a "presumption of probable cause" for his prosecution which "may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); (quoting Colon v. City of New York, 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 456, 455 N.E.2d 1248 (1994)). The existence of probable cause is a complete defense to a claim of malicious prosecution. Savino, 331 F.3d at 72. Plaintiff has listed no facts that would rebut this

4

presumption of probable cause, and in fact he has listed several facts which bolster the inference that probable cause existed for his prosecution, such as the fact that his photograph was selected in a photo array and that an eye witness identified plaintiff as the robber during the trial.

Plaintiff states that "despite the fact defendants . . . were cognizant of the fact that Bayonne and Verrazano toll bridges are equip[ped] with surveillance cameras which was an exculpatory evidence . . . they decided to suppress these evidences [*sic*]." Although a finding that the indictment was procured via suppression of evidence could rebut the presumption of probable cause, see id., this allegation is implausible. Plaintiff does not allege that defendants were in possession of footage from these surveillance cameras or that they prevented plaintiff's criminal defense attorney from accessing this footage; instead, plaintiff simply appears to accuse defendants of failing to pursue this potential source of exculpatory evidence on plaintiff's behalf. Since the detectives could reasonably have believed that this surveillance footage would not be probative as to plaintiff's guilt or innocence – plaintiff could have loaned his car to a friend that day, for example – their failure to scout out this evidence does not constitute the kind of "police conduct undertaken in bad faith" to which the Savino Court referred when it held that the suppression of evidence could rebut a finding of probable cause.

For the same reasons, plaintiff has failed to allege "actual malice"; a necessary element of a malicious prosecution claim. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). Plaintiff has provided no malicious motive that would have caused these detectives to prosecute him for any reason other than a belief that he could be guilty; the conflicting evidence facing these detectives, including a positive identification by an eye witness, demonstrates a reasonable basis for their belief that plaintiff was guilty.

**B.     False Arrest**

To state a claim for false arrest under § 1983, a "plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). If the defendant had probable cause to arrest the plaintiff, the confinement is considered to have been "privileged" and the false arrest claim fails. Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). Moreover, where an individual's arrest is effectuated pursuant to a warrant, it is well-established that there can be no claim for false arrest. See Williams v. Young, 769 F. Supp. 2d 594, 602 (S.D.N.Y. 2011) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995)). Plaintiff's amended complaint makes clear that he was arrested "pursuant to a warrant." His false arrest claim must therefore be dismissed.

**C.     First Amendment Retaliation**

In the context of prisons, a retaliation claim under the First Amendment is adequately pled if the plaintiff alleges facts tending to establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001). Plaintiff does not allege facts in support of any of these factors. He does not explain what "speech or conduct" is at issue here, let alone how he was punished for this speech. Under his "FIRST AMENDMENT RETALIATION" heading, plaintiff states that "despite the fact he has a long misdemeanor arrest record and the 66th precinct or the New York City Police department failed several times to take him off the streets, he was engaged in a Constitutionally protected 5th Amendment due process and 14th Amendment Equal Protection

Right to enjoyment or Pursuit of Liberty, he was subjected to adverse action that would likely chill a person of ordinary firmness . . . ." This sentence is incomprehensible. Furthermore, the facts alleged in the complaint – which are set forth in plain English – shed no light on plaintiff's grounds for bringing a First Amendment claim. This claim is therefore dismissed.

### D. Due Process and Cruel and Unusual Punishment

Although plaintiff brings claims under the headings "DUE PROCESS" and "CRUEL AND UNUSUAL PUNISHMENT," a pre-trial detainee such as plaintiff is not entitled to the Eighth Amendment's protection against cruel and unusual punishment, since "as a pre-trial detainee the plaintiff is not being 'punished.'" Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (citing Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000)). Instead, pre-trial detainees in state custody are protected against mistreatment at the hands of prison officials by the Due Process Clause of the Fourteenth Amendment. Id.

Allegations that defendants have denied a detainee access to basic human needs such as food or water are evaluated under the deliberate indifference standard, see Benjamin v. Fraser, 343 F.3d 35, 50 (2d Cir. 2003), which requires a plaintiff to establish both that his conditions fell below the "minimal civilized measure of life's necessities," and that defendants knew of and disregarded an excessive risk to the detainees health or safety. Trammel v. Keane, 338 F.3d 155, 161 (2d Cir. 2002); Caiozzo, 581 F.3d at 72.

Reading plaintiff's *pro se* complaint in a light most favorable to him, he has alleged that he was shackled to a wall for 18 hours, during which time he was denied food, water, and the chance to use the toilet. While the denial of access to a bathroom for several hours likely does not amount to a serious deprivation of human needs, see, e.g., Jones v. Marshall, No. 08 Civ. 0562, 2010 U.S. Dist. LEXIS 3608, at *9-10 (S.D.N.Y. Jan. 19, 2010), plaintiff's allegation that

he was unable to eat, drink, or use the bathroom for 18 consecutive hours is sufficient to avoid dismissal for failure to state a claim under 28 U.S.C. § 1915 (e)(2)(B). See Trammel v. Keane, 338 F.3d 155, 165 (2d Cir. 2002) (noting that deprivation of toiletries can rise to unconstitutional conditions, and citing a Third Circuit decision denying summary judgment based in part on denial of a urinal for twenty-nine hours) (citing Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992)); Deblasio v. Rock, No. 9:09-CV-1077, 2010 U.S. Dist. LEXIS 143794, at *48-49 (N.D.N.Y. Sep. 26, 2010) (alleged denial of bathroom access for five hours despite plaintiff's complaints sufficient to survive summary judgment). This claim may therefore proceed.

### E. Monell

As this Court explained in its Memorandum Decision and Order dated May 29, 2012, plaintiff may not sustain a § 1983 claim against the City of New York unless he alleges facts tending to show that an officially adopted policy or custom caused the deprivation of a constitutional right. Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382 (1997) (citing Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978)). Plaintiff has not cured the deficiencies in his Monell claim noted by this Court in the May, 2012, Order. In his amended complaint, plaintiff vaguely alleges that the City of New York is racist and xenophobic, and that New York City police officers utilize racial profiling and are not trained regarding diversity. These generalized allegations are not supported by facts sufficient to make plaintiff's Monell claim plausible. The City of New York, which was dismissed from this case in the Court's May, 2012, Order, therefore will not be reinstated as a defendant in this action despite being listed in the caption of plaintiff's amended complaint.

## CONCLUSION

Plaintiff's claims for malicious prosecution; false arrest; First Amendment retaliation; and cruel and unusual punishment are dismissed under 28 U.S.C. §§ 1915(e)(2)(B). Plaintiff's Due Process Clause claim against the individual defendants – Detective William Greer, Shield # 17751; James M. Williams and Larry A. Olinsky of Command 0580; and Detectives Ryan and Moy of the 66th Precinct – is the only claim that may proceed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
  July 24, 2012